Tristan V. STONGER, Appellant (Respondent),

v.

Beth Ann (Stonger) SORRELL, Appellee (Petitioner).

No. 52S02–0202–CV–130.

Supreme Court of Indiana.

Oct. 7, 2002.

Ronald E. Elberger, George T. Patton, Jr., Bose, McKinney & Evans LLP, Robert E. Saint, Emswiller, Williams, Noland & Clarke, Indianapolis, IN, Attorneys for Appellant.

Matthew R. Gutwein, Baker & Daniels, Indianapolis, IN, Rosemary Higgins Burke, Burke, Lee and Heller, Rochester, IN, Attorneys for Appellee.

Robert W. York, Arthur R. Baxter, Jr., York Schrager Baxter James & Rose, Indianapolis, IN, Attorneys for Amicus Curiae Jamia Jasper Jacobsen.

Stephen R. Carter, Attorney General of Indiana, Gary Damon Secrest, Deputy Attorney General, Indianapolis, IN, Attorneys for Amicus Curiae State of Indiana.

## CIVIL TRANSFER

RUCKER, Justice.

Three years after the trial court awarded custody of the parties' minor children to the mother, the father filed a Trial Rule 60(B) motion to set aside the judgment on grounds of fraud on the court. The trial court denied the motion, and the Court of Appeals reversed. Having previously granted the mother's petition to transfer, we now affirm the trial court.

### Facts and Procedural History

After eight years of marriage, Tristan Stonger ("Father") and Beth Ann (Stonger) Sorrell ("Mother") divorced in August 1991. Initially both parties shared joint legal and physical custody of their two minor children. When Mother remarried and moved to a different county in 1993, Father was awarded physical custody of the children so that they would not have to change schools. On April 24, 1995, Mother filed a petition to modify custody. Shortly thereafter, the trial court appointed Dr. John Ehrmann to perform a custody evaluation. As part of his custody evaluation, Dr. Ehrmann interviewed Mother, Father, and the children; performed psychological tests on Mother and Father; reviewed transcripts from prior custody proceedings; had a licensed social worker visit the residences of Mother and Father; and considered reports and letters from a variety of sources including relatives, friends, and teachers. Dr. Ehrmann also invited the parties to provide any additional information that would assist him in the evaluation. Mother submitted materials from The Family Counseling Center from which she and the children had received counseling services. The materials included notes from Dr. Jamia Jacobsen, who had interviewed the children on a couple of occa-

sions, and a psychological report on the children from Dr. David Gover, which was unfavorable to Father.

After assimilating this information, Dr. Ehrmann submitted a nineteen-page report to the trial court recommending that physical custody be transferred to Mother. On August 15, 1996, after conducting a five-day trial that included testimony from twenty-one witnesses, the trial court entered extensive findings of fact and conclusions of law awarding sole custody to Mother. Father appealed, and the Court of Appeals affirmed the trial court in a memorandum decision. *Stonger v. Sorrell,* No. 52A04–9612–CV–532, 684 N.E.2d 268 (Ind.Ct.App. Sept. 5, 1997).

On June 18, 1999, nearly three years after the trial court awarded custody to Mother, Father filed a Trial Rule 60(B) motion to set aside the judgment on grounds of fraud on the court. The motion focused on The Family Counseling Center materials. On March 15, 2000, after conducting a hearing, the trial court denied Father's motion. Father appealed, and the Court of Appeals reversed. *Stonger v. Sorrell,* 750 N.E.2d 391 (Ind.Ct.App.2001). Having previously granted Mother's petition to transfer, we now affirm the trial court.

### Discussion

#### I. Procedural Issues

Although the substantive law of fraud on the court is settled, there is some amount of inconsistency regarding the procedural aspects of fraud on the court. *Compare Global Travel Agency, Inc. v. Metal Recovery Techs., Inc.,* 727 N.E.2d 1101, 1104 (Ind.Ct.App.2000) (stating that independent action for fraud on the court must be brought within "reasonable" time) *with In re Paternity of Tompkins,* 518 N.E.2d 500, 506 (Ind.Ct.App.1988) (stating that independent action for fraud on the court "may

be brought at anytime"). Therefore, before addressing the merits of Father's claim, we clarify the procedural aspects of fraud on the court.

Our starting point is Indiana Trial Rule 60(B), which provides:

> On motion and upon such terms as are just the court may relieve a party or his legal representative from an entry of default, final order, or final judgment, including a judgment by default, for the following reasons:
>
> . . .
>
> (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.

Ind. Trial Rule 60(B)(3). The rule continues that it "does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding or for fraud upon the court." T.R. 60(B). Citing Federal Rule of Civil Procedure 60(b) and its accompanying commentary, Indiana courts have stated that there are three ways of attacking a judgment on the basis of fraud: (1) a Trial Rule 60(B)(3) motion for intrinsic or extrinsic fraud; (2) an independent action for extrinsic fraud pursuant to Trial Rule 60(B); and (3) an independent action for fraud on the court pursuant to Trial Rule 60(B). *Tompkins,* 518 N.E.2d at 504, 506. In practice it would appear that under existing law there is really only one way to attack a judgment on grounds of fraud on the court; namely, an independent action pursuant to Trial Rule 60(B). *See, e.g., Global Travel Agency,* 727 N.E.2d at 1103–04; *Glover v. Torrence,* 723 N.E.2d 924, 932 (Ind.Ct.App.2000); *In re Marriage of M.E.,* 622 N.E.2d 578, 581 (Ind.Ct.App. 1993); *Tompkins,* 518 N.E.2d at 504. However, federal authority, upon which Indiana courts have relied, provides otherwise. Although we are not bound by feder-

al authority, we look to it for guidance in this case in order to clarify the inconsistencies that currently exist under Indiana law. *See Hefty v. All Other Members of the Certified Settlement Class*, 680 N.E.2d 843, 848 (Ind.1997) (noting "[I]t is appropriate for courts to look at federal court interpretations of the federal rule when applying the Indiana rule.").

■ Similar to Indiana Trial Rule 60(B), Federal Rule of Civil Procedure 60(b) provides:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:

. . .

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party[.]

Fed.R.Civ.P. 60(b)(3). Also similar to Indiana Trial Rule 60(B), Federal Rule of Civil Procedure 60(b) goes on to provide that it does not "limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding . . . or to set aside a judgment for fraud upon the court." *Id.* Federal courts have found that there are three ways to attack a judgment on grounds of fraud on the court pursuant to this rule. *See, e.g., United States v. Buck*, 281 F.3d 1336, 1341–42 (10th Cir.2002). The first method is by way of a motion filed under Federal Rule of Civil Procedure 60(b)(3). *Id.* at 1341. Such a motion may be based on any kind of fraud (intrinsic, extrinsic, or fraud on the court) so long as it is chargeable to an adverse party and has an adverse effect on the moving party. 12 James Wm. Moore et al., Moore's Federal Practice § 60.81[1][a] (3d ed.1997); 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2860 (2d ed.1995). However, the motion is generally limited to the court in which the judgment was rendered. Moore, *supra*, at § 60.60[1]; Wright, *supra*, at § 2860. Further, the motion "shall be made . . . not more than one year after the judgment, order, or proceeding was entered or taken." Fed.R.Civ.P. 60(b). If the time limit for the motion has not expired, this is the preferable way to challenge a judgment on grounds of fraud on the court. Wright, *supra*, at § 2860.

The second method is an independent action for fraud on the court pursuant to the savings clause in Federal Rule of Civil Procedure 60(b), which provides that it "does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding[.]" *Buck*, 281 F.3d at 1341 (quoting Fed.R.Civ.P. 60(b)). This rule "merely reserves whatever power federal courts had prior to the adoption of Rule 60 to relieve a party of a judgment by means of an independent action according to traditional principles of equity." Moore, *supra*, at § 60.80; *see also* 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2868 (2d ed.1995). Independent actions are usually reserved for situations that do not meet the requirements for a motion made under Federal Rule of Civil Procedure 60(b)(3). This is so because: (i) the fraud is not chargeable to an adverse party; (ii) the movant seeks relief from a court other than the rendering court; or, most often, (iii) the one-year time limit for Rule 60(b)(3) motions has expired. Moore, *supra*, at § 60.81[1][a]. An independent action is subject to the doctrine of laches, and its remedy is extremely limited. Moore, *supra*, §§ 60.21[2], 60.83; Wright, *supra*, at § 2868.

The third method is also pursuant to the savings clause in Rule 60(b), which pro-

vides that it "does not limit the power of a court . . . to set aside a judgment for fraud upon the court."[1]  *Buck,* 281 F.3d at 1341 (quoting Fed.R.Civ.P. 60(b)).  This method invokes the inherent power of a court to set aside its judgment if procured by fraud on the court.  *Id.* at 1341; Moore, *supra,* at § 60.21[4][a]; 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2870 (2d ed.1995).  Relief is not dependent on the filing of a motion by a party to the original judgment; the court may assert this power sua sponte.  *Buck,* 281 F.3d at 1341–42; Moore, *supra,* at § 60.21[4]; Wright, *supra,* at § 2870.  There is no time limit for these proceedings.  *Buck,* 281 F.3d at 1342;  Moore, *supra,* at § 60.21[4][g]; Wright, *supra,* at § 2870.

We find the federal authority on this matter persuasive and therefore adopt it for analyzing claims under Indiana Trial Rule 60(B).

### II.  Substance of Father's Claim

■ Regardless of which procedural avenue a party selects to assert a claim of fraud on the court, the party must establish that an unconscionable plan or scheme was used to improperly influence the court's decision and that such acts prevented the losing party from fully and fairly presenting its case or defense.  *Glover,* 723 N.E.2d at 933; *Humbert v. Smith,* 655 N.E.2d 602, 607 (Ind.Ct.App.1995), *aff'd,* 664 N.E.2d 356 (Ind.1996) (affirming summarily the opinion of the Court of Appeals as to sufficiency of the evidence and fraud on the court); *Tompkins,* 518 N.E.2d at

507.  Fraud on the court has been narrowly applied and is limited to the most egregious of circumstances involving the courts.  *Glover,* 723 N.E.2d at 933; *In re Paternity of K.M.,* 651 N.E.2d 271, 277 (Ind.Ct.App.1995); *Tompkins,* 518 N.E.2d at 507 (relying on *Hazel–Atlas Glass Co. v. Hartford–Empire Co.,* 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944), a case in which the United States Supreme Court examined and applied the doctrine of fraud on the court).

The record in this case is not clear as to which procedural avenue Father selected for his Trial Rule 60(B) motion.  However, because nearly three years had passed when Father filed the motion, he missed the deadline for a motion pursuant to Trial Rule 60(B)(3).  We therefore construe Father's motion either as an independent action or as a pleading to invoke the court's inherent power to grant relief for fraud on the court.  Regardless of how we analyze his claim, Father is not entitled to relief.

The substance of Father's Trial Rule 60(B) motion was that Dr. Ehrmann incorporated fraudulent materials from The Family Counseling Center into his report which ultimately influenced the trial court's decision to transfer custody to Mother.  Father presented the following evidence in support: (1) Dr. Jacobsen's curriculum vitae contained inaccuracies regarding her academic training; (2) the psychological report on the children bearing Dr. Gover's signature was in fact signed by a secretary without Dr. Gover's authorization; and (3) Dr. Gover did not recall preparing the report.[2]

---

1.  Some federal courts have "unnecessarily confused" independent actions for fraud on the court and the doctrine of fraud on the court.  Moore, *supra,* at § 60.81[1][b][v].  Although fraud on the court can be raised in a Rule 60(b)(3) motion, in an independent action, or sua sponte by a court, "it is a separate concept from the idea of an independent ac-

tion in equity for relief from a judgment."  Moore, *supra,* at § 60.81[1][b][v].  As best we can tell, this confusion also appears to be a source of the inconsistencies that currently exist under Indiana law.

2.  Dr. Jacobsen has filed an amicus brief in which she addresses the alleged inaccuracies in her curriculum vitae at length and vehe-

Mother responded that even if this evidence was true, Dr. Ehrmann's recommendation to transfer custody would have remained the same without the materials from The Family Counseling Center and therefore they could not possibly have influenced the trial court's decision to transfer custody. When asked at the Trial Rule 60(B) hearing how much weight he gave to The Family Counseling Center materials, Dr. Ehrmann responded that he did not find the materials "particularly significant" and that they were not "by any means close to the strongest or one of the strongest factors in me arriving at my conclusions and recommendations." R. at 1085. Moreover, when asked "[i]s it safe to say had you not received any information from [T]he Family Counseling Center, your recommendation would remain the same," Dr. Ehrmann replied "[a]bsolutely, without question." R. at 1085.

In ruling on Father's Trial Rule 60(B) motion, the trial court first observed that it "believe[d] [Dr. Ehrmann's] testimony that the Gover/Jacobsen evaluation and materials were not significant to his decision and carried little weight," and "didn't change [his] opinion...." R. at 208. Although the trial court called Dr. Gover's report a "fabrication," it found that the report was "tangential to the true issues pertaining to custody" and did not "count for much." R. at 207, 210. As for Dr. Jacobsen's curriculum vitae, the trial court suggested "appropriate professional review of [her] credentials ... be initiated." R. at 207. Concluding that Father failed to carry his burden of proof, the trial court denied his Trial Rule 60(B) motion.

■ The decision of whether to grant or deny a Trial Rule 60(B) motion for relief from judgment is within the sound, equitable discretion of the trial court. *Wolvos v. Meyer*, 668 N.E.2d 671, 678 (Ind.1996). We will not reverse a denial of a motion for relief from judgment in the absence of an abuse of discretion. *Id.; Miller v. Moore*, 696 N.E.2d 888, 889 (Ind. Ct.App.1998). Moreover, where as here, the trial court enters special findings and conclusions pursuant to Indiana Trial Rule 52(A), our standard of review is two-tiered. First, we determine whether the evidence supports the findings, and second whether the findings support the judgment. *Carnahan v. Moriah Prop. Owners Ass'n*, 716 N.E.2d 437, 443 (Ind.1999). The trial court's findings and conclusions will be set aside only if they are clearly erroneous. *Id.* In reviewing the trial court's entry of special findings, we neither reweigh the evidence nor reassess the credibility of the witnesses. *Indianapolis Convention Ass'n v. Newspaper*, 577 N.E.2d 208, 211 (Ind.1991). Rather we must accept the ultimate facts as stated by the trial court if there is evidence to sustain them. *Estate of Reasor v. Putnam County*, 635 N.E.2d 153, 158 (Ind.1994).

■ We agree with the trial court that Father failed to carry his burden of proving fraud on the court. To prove fraud on the court, it is not enough to show a possibility that the trial court was misled. *Humbert*, 655 N.E.2d at 607; *K.M.*, 651 N.E.2d at 277; *Pinter v. Pinter*, 641 N.E.2d 101, 104 (Ind.Ct.App.1994). Rather, there must be a showing that the trial court's decision was actually influenced. *G.H. Skala Const. Co. v. NPW, Inc.*, 704 N.E.2d 1044, 1049 (Ind.Ct.App.1998), *trans. denied*. Father has made no showing that Dr. Jacobsen's curriculum vitae or Dr. Gover's report actually influenced the

mently denies any involvement in the preparation and signing of Dr. Gover's report. In fact, Dr. Jacobsen testified at the Trial Rule

60(B) hearing that she did not instruct the secretary to prepare or sign Dr. Gover's report. R. at 377, 380.

trial court's decision to transfer custody; rather, the evidence presented at the Trial Rule 60(B) hearing points to the conclusion that they had no influence on the trial court's decision. This conclusion is buttressed by evidence of record that shows:(1) neither Dr. Jacobsen nor Dr. Gover were witnesses in the 1996 custody modification proceedings; (2) Dr. Jacobsen's curriculum vitae was not provided to Dr. Ehrmann or the trial court in the course of those proceedings; (3) Dr. Ehrmann's nineteen-page report recommending that physical custody be transferred to Mother did not reference Dr. Jacobsen's curriculum vitae and reduced The Family Counseling Center materials to only five paragraphs; and (4) the trial court's forty-six page findings of fact and conclusions of law awarding sole custody to Mother did not even mention Dr. Jacobsen, Dr. Gover, or The Family Counseling Center.

### Conclusion

The trial court's findings and conclusions are not clearly erroneous and the trial court did not abuse its discretion in denying Father's Trial Rule 60(B) motion for relief from judgment. Accordingly, we affirm the trial court.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.