

Dec 07 2015, 8:28 am

ATTORNEY FOR APPELLANT

Bryan L. Ciyou
Ciyou and Dixon, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Brad Barton, <br> *Appellant-Petitioner,* <br><br> v. <br><br> Alexandra Barton, <br> *Appellee-Respondent* | December 7, 2015 <br><br> Court of Appeals Case No. <br> 32A04-1412-DR-550 <br><br> Appeal from the Hendricks Circuit Court <br><br> The Honorable Jeffrey V. Boles, Judge <br><br> The Honorable Daniel F. Zielinski, Judge <br><br> Trial Court Cause No. <br> 32C01-1109-DR-641 |

**Crone, Judge.**

## Case Summary

[1]     In a consolidated appeal, Brad Barton ("Husband") appeals the trial court's decree dissolving his marriage to Alexandra Barton ("Wife") and the trial court's subsequent order denying his motion for relief from judgment on the

basis of fraud or misrepresentation.[1]  On appeal, Husband contends that each of the appealed orders constitutes an abuse of discretion.  We conclude that the trial court did not abuse its discretion in denying Husband's motion for relief from judgment and we affirm that order in its entirety.  Regarding the dissolution decree, we conclude that the trial court did not abuse its discretion in awarding incapacity spousal maintenance and attorney's fees to Wife.  However, we conclude that the trial court erred in dividing the marital estate, namely in valuing and dividing Husband's pension and deferred tax savings plan.  Therefore, we affirm in part, reverse in part, and remand with instructions.

## Facts and Procedural History

Husband and Wife were married on April 12, 2005.  No children were born of the marriage.  Husband filed his petition for dissolution of marriage on September 1, 2011, and Wife filed her counter-petition for dissolution on October 20, 2011.  Following numerous continuances and extensions of time, a final dissolution hearing was held on October 2, 2014.  The dissolution court entered its decree on October 31, 2014.  In addition to dividing the marital property, which primarily included Husband's pension and deferred tax savings plan, the dissolution court found Wife to be physically incapacitated to the extent that her ability to support herself is materially affected.  Accordingly, the

---

[1]  When referring to portions of the trial transcripts, we will cite to the final dissolution hearing transcript as "Dissolution Tr." and the motion for relief from judgment hearing transcript as "60(B) Tr."

court ordered Husband to pay spousal maintenance in the amount of $1500 per month and to secure COBRA coverage for Wife until she becomes eligible for Medicare.[2] The dissolution court also found that Husband caused Wife to incur extraordinary attorney's fees by his failures to comply with discovery, switching attorneys, and delaying the case. Thus, the court ordered Husband to pay Wife's attorney's fees in the amount of $24,364.18.

[3] Husband filed his notice of appeal on December 1, 2014. Shortly thereafter, Husband filed a "Motion to Stay Order on Dissolution Decree" pending appeal. Specifically, Husband requested that the dissolution court stay its order regarding the award of spousal maintenance and attorney's fees, as well as the division of Husband's pension and deferred tax savings plan. The dissolution court granted the motion to stay regarding the division of Husband's retirement benefits, but denied the motion regarding the award of spousal maintenance and attorney's fees.

[4] Wife remarried on December 12, 2014. On April 21, 2015, Husband filed his petition for leave to file an Indiana Trial Rule 60(B) motion for relief from judgment in the dissolution court and requested that we remand his appeal pending that ruling. Our motions panel granted Husband's petition and remanded the matter to the dissolution court. Husband subsequently filed his Trial Rule 60(B) motion challenging the dissolution court's award of spousal

---

[2] The record indicates that Wife has since rescinded her request for Husband to provide COBRA coverage. 60(B) Tr. at 65.

maintenance and attorney's fees to Wife. Following a hearing, the trial court issued its findings of fact, conclusions thereon, and order denying Husband's motion for relief from judgment. Husband then filed his amended notice of appeal, and this Court assumed jurisdiction over a consolidated appeal of both the dissolution decree and the trial court's order on the motion for relief from judgment.[3]

## Discussion and Decision

We begin by noting that Wife did not file an appellee's brief. When an appellee fails to submit a brief, we do not undertake the burden of developing appellee's arguments. *K.L. v. E.H.*, 6 N.E.3d 1021, 1029 (Ind. Ct. App. 2014). Instead, we apply a less stringent standard of review and may reverse if the appellant establishes prima facie error. *Id*. "Prima facie error in this context is defined as, at first sight, on first appearance, or on the face of it." *Falatovics v. Falatovics*, 15 N.E.3d 108, 110 (Ind. Ct. App. 2014) (citation omitted). With this in mind, we will address Husband's appeal from each order in turn.

---

[3] We note that the Honorable Jeffrey V. Boles presided over the dissolution proceedings and we will refer to "the dissolution court" when referring to those proceedings. The Honorable Daniel F. Zielinski presided over the motion for relief from judgment proceeding and we will refer to "the trial court" when referring to that proceeding.

## Section 1 – The trial court did not abuse its discretion in denying Husband's motion for relief from judgment regarding the dissolution court's incapacity spousal maintenance award.

[6] We first address Husband's appeal from the trial court's denial of his motion for relief from judgment. Specifically, Husband asserts that the trial court abused its discretion in denying his motion for relief from the dissolution court's award to Wife of incapacity spousal maintenance on the basis of fraud or misrepresentation.[4] Indiana Trial Rule 60(B) provides in relevant part, "On motion and upon such terms as are just the court may relieve a party … from a judgment … for the following reasons: … (3) fraud (whether heretofore denominated as intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." The burden is on the moving party to establish the ground for relief under Trial Rule 60(B). *In re Paternity of P.S.S.*, 934 N.E.2d 737, 740 (Ind. 2010). While we will discuss the actual merits of the incapacity maintenance award later in our opinion, Trial Rule 60(B) motions address only the procedural, equitable grounds for justifying relief from the legal finality of a final judgment, not the legal merits of the judgment. *Id*.

[7] We review the trial court's ruling on a motion for relief from judgment using an abuse of discretion standard. *Speedway SuperAmerica, LLC v. Holmes*, 885

---

[4] Based upon Husband's statement of the issues and the first argument section of his brief, it does not appear that he is appealing the trial court's denial of his motion for relief from judgment regarding the dissolution court's award of attorney's fees. He does briefly mention his motion for relief coupled with the attorney's fees issue in a subsequent section of his brief, and we will likewise address it later in our opinion as we deem appropriate.

N.E.2d 1265, 1270 (Ind. 2008). An abuse of discretion occurs only when the trial court's action is clearly erroneous, that is, against the logic and effect of the facts before it and inferences drawn therefrom. *P.S.S.*, 934 N.E.2d at 741. Moreover, where as here, the trial court enters special findings and conclusions pursuant to Indiana Trial Rule 52(A), we apply a two-tiered standard of review. *Stonger v. Sorrell*, 776 N.E.2d 353, 358 (Ind. 2002). First we determine if the evidence supports the findings, and second whether the findings support the judgment. *Id*. The trial court's findings and conclusions will be set aside only if clearly erroneous. *Id*. We neither reweigh the evidence nor reassess witness credibility. *Id*. Instead, we must accept the ultimate facts as stated by the trial court if there is evidence to sustain them. *Id*.

[8] "A party making a claim under Trial Rule 60(B)(3) and alleging fraud or misrepresentation must demonstrate that: (1) the opposing party knew or should have known from the available information that the representation is false, and (2) the misrepresentation was made with respect to a material fact which would change the trial court's judgment." *Seleme v. JP Morgan Chase Bank*, 982 N.E.2d 299, 310-11 (Ind. Ct. App. 2012) (citation and quotation marks omitted), *trans. denied* (2012). In his motion for relief, Husband asserted that he had discovered "new material evidence" that during the final dissolution hearing, Wife misrepresented her "financial needs," and that such misrepresentation of material fact affected the dissolution court's judgment awarding incapacity spousal maintenance to Wife. Appellant's App. at 161,

166.[5] Specifically, Husband claimed that Wife was residing with and being financially supported by her then-boyfriend (now husband), that she misled the dissolution court in stating that she did not intend to marry or continue residing with her boyfriend, and that Social Security Disability ("SSDI") was her only source of income. Husband points to Wife's post-dissolution remarriage to support his claim that Wife misled the court.

[9] During the hearing on the motion for relief from judgment, Wife confirmed her earlier testimony that, at the time of the final dissolution hearing, she did not intend to marry her boyfriend, that she intended to move out of his residence and obtain her own housing, and that SSDI was her only source of income. In denying Husband's motion for relief, the trial court found in relevant part,

> 7. While it might be true that [Wife's] testimony was "artful[,]" Court cannot find in the record that [Wife] misrepresented that she received any other "income" than that from the Social Security Administration.

Appellant's App. at 25. It is the trial court's prerogative to weigh the evidence and assess witness credibility, and we will not second-guess that determination

---

[5] We note that, at the trial court level, Husband appeared confused as to which subsection of Indiana Trial Rule 60(B) applied to his motion for relief. When a request for relief is based on newly discovered evidence pursuant to Trial Rule 60(B)(2), the appellant must show, among other things, that evidence could not have been discovered before trial by the exercise of due diligence. *State Farm Fire & Cas. Co. v. Radcliff*, 18 N.E.3d 1006, 1013 (Ind. Ct. App. 2014), *trans. denied* (2015). Trial Rule 60(B)(3) motions, on the other hand, are based on fraud on the court, so long as it is chargeable to an adverse party and had an adverse effect on the moving party. *Id.* In his motion, Husband referred both to the "new evidence" language of subsection (B)(2) and the "fraud" and "misrepresentation" language of subsection (B)(3). However, throughout his brief on appeal, he appears to rely solely on the fraud and misrepresentation language of Trial Rule (60)(B)(3).

on appeal. *Stonger*, 776 N.E.2d at 358. We agree with the trial court that Husband failed to carry his burden of proving that, during the dissolution proceedings, Wife misrepresented any material fact to the dissolution court regarding her financial resources which would have changed the court's judgment. Indeed, the evidence supports the trial court's finding that SSDI was Wife's only source of income at the time of dissolution and, in turn, this finding supports the trial court's denial of relief on the basis of fraud or misrepresentation.

[10] While we acknowledge Husband's frustration with Wife's remarriage approximately six weeks after dissolution, that does not alter what Wife's (not her then-boyfriend's) financial resources were at the time of dissolution. The crux of Husband's claim can be summarized essentially as this: Wife lied about her future intent to remarry, and the dissolution court would not have awarded her incapacity spousal maintenance if she had not misrepresented that intent. First, the entirety of Husband's argument is an invitation for this Court to reassess Wife's credibility, which we will not do. Moreover, we note that, as a general matter, a claim of actual fraud cannot be based on representations of future conduct, on broken promises, or on representations of existing intent that are not executed. *Wallem v. CLS Indus., Inc.*, 725 N.E.2d 880, 889 (Ind. Ct. App. 2000). These are exactly the types of representations complained about by Husband, and such complaint is misplaced in a motion for relief from judgment premised upon fraud or misrepresentation.

Based upon the record before us, we cannot say that the trial court clearly erred in rejecting Husband's contention that Wife misrepresented any material fact regarding her financial resources which would have changed the dissolution court's decision to award incapacity spousal maintenance. Thus, the trial court did not abuse its discretion in denying Husband's motion for relief from judgment, and we affirm the trial court's order.

## Section 2 – The dissolution court did not abuse its discretion in awarding Wife incapacity spousal maintenance.

Turning now to the dissolution decree, Husband contends that the dissolution court abused its discretion in awarding Wife incapacity spousal maintenance. A trial court's power to award spousal maintenance is wholly within its discretion. *Spivey v. Topper*, 876 N.E.2d 781, 784 (Ind. Ct. App. 2007). The presumption that the court correctly applied the law in making an award of spousal maintenance is one of the strongest presumptions applicable to our consideration of a case on appeal. *Id*. We will reverse a trial court's decision to award spousal maintenance only when the decision is clearly against the logic and effect of the facts and circumstances of the case. *Clokey v. Bosley Clokey*, 956 N.E.2d 714, 718 (Ind. Ct. App. 2011), *aff'd on reh'g*, 957 N.E.2d 1288.

Indiana Code Section 31-15-7-1 provides that the trial court may order spousal maintenance as part of its disposition of marital property, if the court makes certain findings including,

> (1) If the court finds a spouse to be physically or mentally incapacitated to the extent that the ability of the incapacitated

spouse to support himself or herself is materially affected, the court may find that maintenance for the spouse is necessary during the period of incapacity, subject to further order of the court.

Ind. Code § 31-15-7-2. With regard to such incapacity maintenance, our supreme court has observed,

> Where a trial court finds that a spouse is physically or mentally incapacitated to the extent that the ability of that spouse to support himself or herself is materially affected, the trial court should normally award incapacity maintenance in the absence of extenuating circumstances that directly relate to the criteria for awarding incapacity maintenance.

*Cannon v. Cannon*, 758 N.E.2d 524, 527 (Ind. 2001). Thus, our supreme court has made clear that a trial court's discretion is "limited" regarding whether to award incapacity maintenance once the court makes the requisite finding regarding incapacity. *Coleman v. Atchison*, 9 N.E.3d 224, 229 (Ind. Ct. App. 2014). Once the requisite finding of incapacity has been made, the trial court should award incapacity maintenance or identify specific extenuating circumstances directly related to the statutory criteria for awarding such maintenance that would justify denying the award. *Id.*

[14] Here, the evidence indicates that Wife has been diagnosed with "stiff person's syndrome" with the primary symptom of chronic severe muscular pain. Dissolution Tr. at 59. Wife complains of muscle spasms and falling spells as a result of her condition. To control the pain, Wife must take narcotic medications that cause sedation and impaired response. *Id.* at 61. Wife's

doctor opined that her ability to work is materially affected by her condition. *Id.* at 60. Wife also testified that she applied for and was approved for SSDI benefits due to her condition and her resulting inability to work. Based upon this evidence, the dissolution court found,

> [Wife] succeeded in proving, by testimony of Dr. George Elms[6] and the approval by the Social Security Disability and Benefits that she is entitled to spousal maintenance…. Clearly from the testimony, [Wife] is physically incapacitated to the extent that her ability to support herself is material[ly] affected.

Appellant's App. at 22-23.

[15] The dissolution court found no extenuating circumstances directly related to the statutory criteria for awarding such maintenance that would justify denying the award, and there is nothing in the record to convince us that such extenuating circumstances existed at the time of dissolution.[7] Although Husband asserts that Wife failed to establish that her incapacity actually prevents her from working and supporting herself, the dissolution court found to the contrary in concluding that the evidence presented established that Wife's ability to support

---

[6] In the transcript, the doctor spells his surname "Elmes." Dissolution Tr. at 57.

[7] As stated earlier, the statutory criteria for awarding incapacity maintenance are: (1) the spouse's physical or mental incapacity, (2) which incapacity materially affects the spouse's self-supporting ability. *See* Ind. Code § 31-15-7-2(1).

herself is materially affected.[8]  Findings are clearly erroneous only if the record is devoid of facts or inferences to support them, or if they do not support the judgment.  The record here is not so devoid.  The dissolution court did not abuse its discretion in awarding Wife incapacity spousal maintenance.[9]

[16]  Husband further posits that the dissolution court failed to consider his ability to pay Wife $1500 per month in incapacity spousal maintenance, and therefore the award constitutes an abuse of discretion.  We agree that "in determining the propriety of a maintenance award, the 'ability of the husband to pay should also be made to appear.'"  *Clokey*, 957 N.E.2d at 1289 (quoting *Rooney v. Rooney*, 231 Ind. 443, 445, 109 N.E.2d 93, 94 (1952)), *opinion on reh'g*.  Here, the dissolution court made specific findings regarding Husband's substantial weekly earnings ($32.20 per hour for forty hours plus overtime)[10] from his United Parcel Service employment.  Appellant's App. at 20.  Thus, although the dissolution court did

---

[8] As indicated by the dissolution court's findings, in addition to the medical testimony, Wife's receipt of SSDI benefits strongly suggests that she is "incapacitated" for spousal maintenance purposes.  *See Pohl v. Pohl*, 15 N.E.3d 1006, 1011-12 (Ind. 2014) (noting that the standard for SSDI benefits is "far more exacting than the incapacity-maintenance standard, which inquires only whether the recipient's means of self-support are 'materially affected.'").

[9] Husband relies heavily on *In re Marriage of Gertiser*, 24 N.E.3d 521 (Ind. Ct. App. 2015), *trans. granted*, and argues that, at the time of dissolution, Wife had "financial resources available to her" both from SSDI and her then-boyfriend (now husband), and therefore she did not then and does not now (due to her remarriage) need incapacity maintenance.  Appellant's Br. at 19.  This Court's opinion in *Gertiser* was recently vacated by our supreme court and no longer has any precedential or persuasive value.  *In re Marriage of Gertiser*, No. 29S02-1511-DR-643, 2015 WL 6941124 (Ind. Nov. 10, 2015); *see* Ind. Appellate Rule 58 (Except under specific circumstances, if transfer is granted, the opinion of the Court of Appeals shall be automatically vacated).  In any event, Husband's reliance on *Gertiser* is misplaced as *Gertiser* involved a motion to modify and revoke an incapacity spousal maintenance award based upon the financial change in circumstances due to a remarriage, not the original incapacity maintenance award as is involved here.

[10] Although the dissolution court found that Husband earns $32.20 per hour plus overtime, Appellant's App. at 20, Husband testified that he gets paid $32.90 per hour plus overtime.  Dissolution Tr. at 30, 117.

not state so explicitly, it clearly considered Husband's ability to pay the maintenance award. Husband's assertion on appeal that he is unable to satisfy the maintenance award for various reasons despite his income is merely an invitation for us to reweigh the evidence in his favor, and we will not. A deferential view of all the evidence presented persuades us that no abuse of discretion occurred.

## Section 3 – The dissolution court did not abuse its discretion in awarding Wife attorney's fees.

[17] Husband next contends that the dissolution court abused its discretion in awarding Wife $24,364.18 in attorney's fees. Pursuant to Indiana Code Section 31-15-10-1, a trial court may order a party in a dissolution proceeding to pay a reasonable amount of the other party's attorney's fees, after considering the parties' resources, their economic condition, their ability to engage in gainful employment and earn income, and other factors bearing on the reasonableness of the award. *Troyer v. Troyer*, 987 N.E.2d 1130, 1142-43 (Ind. Ct. App. 2013), *trans. denied* (2013). Misconduct that directly results in additional litigation expenses may properly be taken into account in the trial court's decision to award attorney's fees. *Hendricks v. Hendricks*, 784 N.E.2d 1024, 1028 (Ind. Ct. App. 2003).

[18] The trial court has broad discretion in awarding attorney's fees. *Bessolo v. Rosario*, 966 N.E.2d 725, 733 (Ind. Ct. App. 2012). "Reversal is proper only where the trial court's award is clearly against the logic and effect of the facts and circumstances before the court." *Id.* "Further, 'the trial court need not give

its reasons for its decision to award attorney's fees.'" *Id*. (quoting *Thompson v. Thompson*, 811 N.E.2d 888, 905 (Ind. Ct. App. 2004), *trans. denied*.).

[19] The dissolution court's award of attorney's fees to Wife is supported by the record. The basis for the award is partially Husband's misconduct. The court found that Husband caused Wife "to incur extraordinary attorneys' fees by his failures to comply with discovery, switching attorneys, and delaying the case." Appellant's App. at 23. Husband concedes that some of these things did occur, but he claims that Wife was equally if not more responsible for causing any delays. We again decline Husband's invitation for us to reweigh the evidence and reassess witness credibility on this issue. Also, as noted above, the dissolution court made specific findings regarding the disparity in the parties' earning abilities, specifically finding that Husband earns $32.20 per hour for a forty-hour work week ($5152/month) and that Wife has been unemployed due to her physical incapacity since sometime in 2011. *Id*. at 21. The court found that Wife's only source of income is SSDI of $1491 per month. Thus, Husband's monthly income is more than three times that of Wife.

[20] While Husband complains that the dissolution court awarded Wife all of her attorney's fees rather than just a portion, we conclude that the extreme disparity in the parties' earning abilities and financial resources as shown by the evidence justifies the award. We cannot say that the dissolution court's decision to award Wife $24,364.18 in attorney's fees is clearly against the logic and effect of

the facts and circumstances before the court. The dissolution court did not abuse its discretion.[11]

## Section Four – The dissolution court erred in valuing and dividing Husband's pension and deferred tax savings plan.

As noted by Husband, the dissolution court determined that the only two marital assets with value and subject to division were Husband's pension and deferred tax savings plan.[12] Husband asserts that the dissolution court abused its discretion in dividing these retirement assets by apparently awarding Wife the entire value earned during the marriage of both of these assets. We agree with Husband that the dissolution court committed error in valuing and dividing the retirement assets, and we reverse that portion of the dissolution decree and remand for further proceedings.

---

[11] We will not seriously entertain Husband's repeated assertion that Wife was "gifted" the money to pay her attorney's fees and therefore is in a better economic condition than he is to pay the fees. Appellant's Br. at 37. In denying Husband's motion for relief from judgment on this issue, the trial court found to the contrary, stating, "Court cannot find from the record that [W]ife's attorney fees were 'gifted' to her, only that another individual, her now current husband, paid a substantial portion of her attorney fees. However, again, nothing in the record reflects whether those fees need to be repaid." Appellant's App. at 25. Husband has failed to demonstrate that this finding is clearly erroneous.

[12] Husband briefly mentions two additional marital assets/liabilities about which he claims that he needs "clarification" as to how they were handled in the dissolution decree. Appellant's Br. at 41. First, regarding an alleged debt of $63,868 owed by the parties to Wife's mother, the dissolution court made clear in its findings that there was insufficient evidence presented regarding this alleged debt, and therefore it is assignable to neither party and not included in the marital estate. Regarding the allegedly severely damaged Chrysler Pacifica vehicle that was given to Wife pursuant to a provisional agreement, the dissolution court made clear that the vehicle was included in the martial pot, but it assigned "no value of the Pacifica to either party." Appellant's App. at 21. The dissolution decree is sufficiently clear on these issues, and we believe that no further clarification in necessary.

[22]     We begin our discussion of this issue with a summary of Indiana's one pot theory.

> It is well settled that in a dissolution action, all marital property goes into the marital pot for division, whether it was owned by either spouse before the marriage, acquired by either spouse after the marriage and before final separation of the parties, or acquired by their joint efforts. For purposes of dissolution, property means all the assets of either party or both parties. The requirement that all marital assets be placed in the martial pot is meant to insure that the trial court first determines that value before endeavoring to divide property. Indiana's one pot theory prohibits the exclusion of any asset in which a party has a vested interest from the scope of the trial court's power to divide and award. While the trial court may decide to award a particular asset solely to one spouse as part of its just and reasonable property division, it must first include the asset in its consideration of the marital estate to be divided.

*Falatovics*, 15 N.E.3d at 110 (citations and quotation marks omitted).

[23]     After determining what constitutes marital property, the trial court must then divide the marital property under the presumption that an equal division is just and reasonable. *Leever v. Leever*, 919 N.E.2d 118, 124 (Ind. Ct. App. 2009). This presumption may be rebutted by relevant evidence that an equal division would not be just and reasonable. Ind. Code § 31-15-7-5. However, the trial court must state its reasons for deviating from the presumption of an equal division in its findings and judgment. *Hartley v. Hartley*, 862 N.E.2d 274, 285 (Ind. Ct. App. 2007).

[24]     We note that nowhere in the dissolution court's findings or judgment does the court state reasons for deviating from the presumption of an equal division, so we must presume that the dissolution court intended a 50/50 division of marital property. In valuing and dividing Husband's retirement assets, the dissolution court found,

> 13. [Husband] has a Teamster's Deferred Tax Savings Plan with a value of $22,842.33 and he should pay [Wife] a figure computed by a factor of the number of years the parties were married, approximately six, divided by the number of years [Husband] used to earn the deferred tax savings plan times the $22,842.33 and pay that amount to [Wife] within thirty (30) days.[13]

> 14. Also, [Husband] owns a UPS Pension Plan, as of the date of filing worth $39,823.9[2] earned during the marriage. The multiplier used for the deferred tax savings plan should be used regarding the $39,823.9[2] and that amount shall be paid by [Husband] to [Wife] as a lien upon the value of the pension plan when it begins to pay out to [Husband].[14]

---

[13] Regarding Husband's tax savings plan, it is clear that the dissolution court intends Wife to obtain an immediate distribution of her share of those benefits. *See Kendrick v. Kendrick*, No. 49A02-1412-DR-888, 2015 WL 5562440, at *5 (Ind. Ct. App. Sept. 22, 2015) (citing 2 EQUIT. DISTRIB. OF PROPERTY, 3d §§ 6:30, 6:36 (2014)) (under the "immediate offset method," the trial court determines the present value of the retirement benefits and awards the nonowning spouse his or her share of the benefits in an immediate lump sum), *trans. pending*.

[14] Regarding Husband's pension, it is clear that the dissolution court intends Wife to obtain a deferred distribution of her share of those benefits. *See Kendrick*, 2015 WL 5562440 at *5 (under the "deferred distribution method," the court makes no immediate division of the retirement benefits but determines the future benefits to which the nonowning spouse is entitled).

Appellant's App. at 22. From these findings, it is evident that the dissolution court is purporting to use the coverture fraction formula to divide Husband's pension and deferred tax savings plan between the parties.

[25] This Court has explained,

> The "coverture fraction" formula is one method a trial court may use to distribute pension or retirement plan benefits to the earning and non-earning spouses. Under this methodology, the value of the retirement plan is multiplied by a fraction, the numerator of which is the period of time during which the marriage existed (while pension rights were accruing) and the denominator is the total period of time during which pension rights accrued.

*In re Marriage of Fisher*, 24 N.E.3d 429, 433 (Ind. Ct. App. 2014) (quoting *Hardin v. Hardin*, 964 N.E.2d 247, 250 (Ind. Ct. App. 2012) (citation omitted) (emphasis omitted)). In other words, the coverture fraction formula is applied to determine what portion of a retirement asset is subject to division.

[26] We observe several critical errors in the dissolution court's findings and application of the coverture fraction formula here. We will first explain what should have happened, and we will then explain what apparently did happen. The dissolution court should have included the entire present value of both the pension and the deferred tax savings plan in the marital estate (one pot theory) and then applied the coverture fraction formula to determine what portion of each asset was earned during the marriage and therefore subject to division. The coverture fraction multiplied by the present value of each asset would take

into account the six years of marriage divided by the number of years Husband spent working during which those retirement benefits accrued.[15] After applying the fraction, the dissolution court then should have divided the coverture value of these assets equally between the parties, or state reasons why deviation from an equal division would be appropriate.

[27] Regarding Husband's deferred tax savings plan, the dissolution court properly included in the marital estate the entire present value of the plan, $22,842.33. However, the dissolution court then stated that the coverture fraction formula should be applied to that amount and that Husband should "pay that amount" to Wife. Appellant's App. at 22. Thus, the court appears to have awarded the entire coverture portion of the deferred tax savings plan to Wife, rather than awarding her one half of the coverture portion of the plan based upon the coverture fraction formula. Absent any finding that an equal division of property would not be just and reasonable, this is error.

[28] As for Husband's pension, the record indicates that the total value of the pension at the time of filing was $99,776.33. However, rather than first including the entire value of the pension in the marital pot and then applying the coverture fraction formula to determine the divisible amount, the dissolution court erroneously included what Husband claims is already the

---

[15] The dissolution court did not make a specific finding regarding the denominator of the coverture fraction. For purposes of clarity, we urge the court to do so on remand. Husband presented evidence that the coverture fraction should be 39.9132%, which accounts for 6.3861 years of marriage and 16 years of employment ($6.3861 \div 16 = .399132$). Petitioner's Exh. 10.

coverture portion of Husband's pension, that amount being $39,823.92.[16] While the dissolution court may ultimately determine that the portion of Husband's pension earned prior to the marriage should be awarded solely to him, it must first include the entire asset in the marital pot. *See Falatavics*, 15 N.E.3d at 110. The dissolution court then instructed that the coverture fraction formula be applied to what was already the coverture portion of the pension and, to further compound the problem, awarded Wife the entire value of the resultant figure without reference to why an equal division of property would not be just and reasonable. Again, this was error.

[29] Based upon the foregoing, we conclude that Husband has met his burden to show prima facie error in the dissolution court's valuation and division of his pension and deferred tax savings plan. Accordingly, we reverse that part of the dissolution decree and remand with instructions for the dissolution court to include the entire value of each retirement asset in the marital estate, apply the coverture fraction formula to determine what portion of each asset is subject to division, and then either divide those amounts equally between the parties or state reasons why an equal division of marital property would not be just and reasonable. The dissolution decree is affirmed in all other respects.

---

[16] This number is 39.9132% of $99,776.33. Petitioner's Exh. 10.

Affirmed in part, reversed in part, and remanded.

May, J., and Bradford, J., concur.